# EXHIBIT "A"

Filing # 95953568 E-Filed 09/19/2019 09:52:44 AM

| | |
|---|---|
| [x] IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | |
| [ ] IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | |

| DIVISION | | CASE NUMBER |
|---|---|---|
| [x] CIVIL<br>[ ] DISTRICTS<br>[ ] FAMILY<br>[ ] OTHER | **CIVIL COVER SHEET** | |

| PLAINTIFF | VS. DEFENDANT | CLOCK IN |
|---|---|---|
| ELLIOTT ASKA, as Personal Representative of the Estate of Conrad Jules Aska, deceased, on behalf of himself and all potential beneficiaries and heirs, | ATLAS AIR WORLDWIDE HOLDINGS, INC.; ATLAS AIR, INC.; AMAZON.COM SERVICES, INC.; AMAZON FULFILLMENT SERVICES, INC.; F & E AIRCRAFT MAINTENANCE (MIAMI), LLC; and FLIGHTSTAR AIRCRAFT SERVICES, LLC, | |

The civil cover sheet and the information contained here does not replace the filing and service of pleadings or other papers as required by law. This form is required by the Clerk of Court for the purpose of reporting judicial workload data pursuant to Florida Statute 25.075. See instructions and definitions on reverse of this form.

**TYPE OF CASE** (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x in both the main category and subcategory boxes.

[ ] 001 - Eminent Domain
[ ] 003 - Contracts and Indebtedness
[ ] 010 - Auto Negligence
[ ] 022 - Products Liability
[ ] 023 - Condominium
[x] **Negligence - Other**
    [ ] 097 - Business Governance
    [ ] 098 - Business Torts
    [ ] 099 - Environmental/Toxin Tort
    [ ] 100 - Third Party Indemnification
    [ ] 101 - Construction Defect
    [ ] 102 - Mass Tort
    [ ] 103 - Negligent Security
    [ ] 104 - Nursing Home Negligence
    [ ] 105 - Premises Liability - Commercial
    [ ] 106 - Premises Liability - Residential
    [x] 107 - Negligence - Other
[ ] **Real Property/Mortgage Foreclosure**
    [ ] 108 - Commercial Foreclosure $0 - $50,000
    [ ] 109 - Commercial Foreclosure $50,001 - $249,999
    [ ] 110 - Commercial Foreclosure $250,000 - or more
    [ ] 111 - Homestead Residential Foreclosure $0 - $50,000
    [ ] 112 - Homestead Residential Foreclosure $50,001 - $249,999
    [ ] 113 - Homestead Residential Foreclosure $250,000 or more
    [ ] 114 - Non-Homestead Residential Foreclosure $0 - $50,000
    [ ] 115 - Non-Homestead Residential Foreclosure $50,001 - $249,999
    [ ] 116 - Non-Homestead Residential Foreclosure $250,000 or more
    [ ] 117 - Other Real Property Actions $0 - $50,000
    [ ] 118 - Other Real Property Actions $50,001 - $249,999

[ ] 119 - Other Real Property Actions $250,000 or more
[ ] **Professional Malpractice**
    [ ] 094 - Malpractice - Business
    [ ] 095 - Malpractice - Medical
    [ ] 096 - Malpractice - Other professional
[ ] **Other**
    [ ] 120 - Antitrust/Trade Regulation
    [ ] 121 - Business Transactions
    [ ] 122 - Constitutional Challenge - Statute or Ordinance
    [ ] 123 - Constitutional Challenge - Proposed amendment
    [ ] 124 - Corporate Trust
    [ ] 125 - Discrimination - Employment or Other
    [ ] 126 - Insurance Claims
    [ ] 127 - Intellectual Property
    [ ] 128 - Libel/Slander
    [ ] 129 - Shareholder Derivative Action
    [ ] 130 - Securities Litigation
    [ ] 131 - Trade Secrets
    [ ] 132 - Trust Litigation
[ ] 133 - **Other Civil Complaint**
    [ ] 009 - Bond Estreature
    [ ] 014 - Replevin
    [ ] 024 - Witness Protection
    [ ] 080 - Declaratory Judgment
    [ ] 081 - Injunctive Relief
    [ ] 082 - Equitable Relief
    [ ] 083 - Construction Lien
    [ ] 084 - Petition for Adversary Preliminary Hearing
    [ ] 085 - Civil Forfeiture
    [ ] 086 - Voluntary Binding Arbitration
    [ ] 087 - Personal Injury Protection (PIP)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

REMEDIES SOUGHT (check all that apply):

☒     monetary;

☐     non-monetary declaratory or injunctive relief;

☐     punitive

NUMBER OF CAUSES OF ACTION: [ 6 ]

(specify) _____

_____

IS THIS CASE A CLASS ACTION LAWSUIT?

☐ Yes

☒ No

HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?

☒ No

☐ Yes    If "Yes", list all related cases by name, case number, and court.

_____

_____

_____

IS JURY TRIAL DEMANDED IN COMPLAINT?

☒ Yes

☐ No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature _____ Florida Bar # __516414_____

                    Attorney or party                                   (Bar # if attorney)

 Steven C. Marks _____         9/19/19 _____

(type or print name)                                         Date

Filing # 95953568 E-Filed 09/19/2019 09:52:44 AM

**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law.  This form must be filed by the plaintiff or petitioner for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to section 25.075, Florida Statutes.  (See instructions for completion.)

---

I.      **CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

Case No.: _____
Judge: _____

<u>Elliott Aska</u>
 Plaintiff
                vs.
<u>Atlas Air Worldwide Holdings, Inc., Atlas Air, Inc., Amazon.com Services, Inc., Amazon Fulfillment Services,</u>
<u>Inc., F & E Aircraft Maintenance (Miami), LLC, Flightstar Aircraft Services, LLC</u>
Defendant

---

II.      **TYPE OF CASE**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☒ Negligence – other
  ☐   Business governance
  ☐   Business torts
  ☐   Environmental/Toxic tort
  ☐   Third party indemnification
  ☐   Construction defect
  ☐   Mass tort
  ☐   Negligent security
  ☐   Nursing home negligence
  ☐   Premises liability – commercial
  ☐   Premises liability – residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
  ☐   Commercial foreclosure $0 - $50,000
  ☐   Commercial foreclosure $50,001 - $249,999
  ☐   Commercial foreclosure $250,000 or more
  ☐   Homestead residential foreclosure $0 – 50,000
  ☐   Homestead residential foreclosure $50,001 - $249,999
  ☐   Homestead residential foreclosure $250,000 or more
  ☐   Non-homestead residential foreclosure $0 - $50,000

☐ Non-homestead residential foreclosure $50,001 - $249,999
☐ Non-homestead residential foreclosure $250,00 or more
☐ Other real property actions $0 - $50,000
☐ Other real property actions $50,001 - $249,999
☐ Other real property actions $250,000 or more

☐ Professional malpractice
  ☐   Malpractice – business
  ☐   Malpractice – medical
  ☐   Malpractice – other professional
☐ Other
  ☐   Antitrust/Trade Regulation
  ☐   Business Transaction
  ☐   Circuit Civil - Not Applicable
  ☐   Constitutional challenge-statute or ordinance
  ☐   Constitutional challenge-proposed amendment
  ☐   Corporate Trusts
  ☐   Discrimination-employment or other
  ☐   Insurance claims
  ☐   Intellectual property
  ☐   Libel/Slander
  ☐   Shareholder derivative action
  ☐   Securities litigation
  ☐   Trade secrets
  ☐   Trust litigation

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**III.     REMEDIES SOUGHT** (check all that apply):
   ☒   Monetary;
   ☐   Non-monetary declaratory or injunctive relief;
   ☐   Punitive

**IV.     NUMBER OF CAUSES OF ACTION: (     )**
   (Specify)

   6

**V.      IS THIS CASE A CLASS ACTION LAWSUIT?**
   ☐   Yes
   ☒   No

**VI.     HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
   ☒   No
   ☐   Yes – If "yes" list all related cases by name, case number and court:

**VII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
   ☒   Yes
   ☐   No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature s/ Steven C. Marks        FL Bar No.: 516414
         Attorney or party                                      (Bar number, if attorney)

         Steven C. Marks          09/19/2019
         (Type or print name)                                Date

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.:

ELLIOTT ASKA, as Personal Representative of
the Estate of Conrad Jules Aska, deceased, on behalf
of himself and all potential beneficiaries and heirs,

     Plaintiff,

vs.

ATLAS AIR WORLDWIDE HOLDINGS, INC.;
ATLAS AIR, INC.; AMAZON.COM SERVICES,
INC.; AMAZON FULFILLMENT SERVICES, INC.;
F & E AIRCRAFT MAINTENANCE (MIAMI), LLC;
and FLIGHTSTAR AIRCRAFT SERVICES, LLC;

     Defendants.

_____/

## **COMPLAINT**

1.    This action arises out of the crash of Atlas Air flight 3591 on February 23, 2019.

The aircraft, a Boeing 767-375BCF, N1217A, entered a rapid descent from 6,000 ft and impacted

a marshy bay area about 40 miles southeast of George Bush Intercontinental Airport (KIAH),

Houston, Texas.  Plaintiff's decedent, First Officer Conrad Jules Aska, was fatally injured as a

result of the crash.

## **JURISDICTION, PARTIES, AND VENUE**

2.    This action seeks damages in excess of fifteen thousand dollars, exclusive of

attorneys' fees and costs.

3.      Plaintiff, Elliott Aska, is the brother of Conrad Jules Aska, deceased, and resides in Miami, Florida.  Elliott Aska is in the process of being appointed Personal Representative of the Estate of Conrad Jules Aska, thereby authorizing him to bring this lawsuit.

4.      As the Personal Representative of the Estate of Conrad Jules Aska, deceased, Elliott Aska, brings this action on behalf of the Estate, and all beneficiaries and survivors, including but not limited to the following:

      a.      Kayla Aska, natural daughter of the decedent;

      c.      The Estate of Conrad Jules Aska; and

      d.      Any other individual entitled to recover as a matter of law.

5.      Defendant, Atlas Air Worldwide Holdings, Inc. (hereinafter "Atlas Worldwide"), is a Delaware corporation having its principal place of business in New York, where it is a citizen and resident.  Atlas Worldwide has engaged in and continues to engage in substantial and not isolated business activity on a continuous and systematic basis in the State of Florida, giving this Court jurisdiction pursuant to Florida Statutes § 48.193.  Although Atlas Worldwide does business in the State of Florida for the purpose of accumulating monetary profit, it does not maintain a regular place of business nor a designated registered agent.  For these reasons, long-arm service of process is to be upon the Florida Secretary of State, pursuant to Florida Statutes § 48.19.  This suit arises out of business contacts operating aircraft in the State of Florida and.  Under the circumstances, Atlas Worldwide has appointed the Florida Secretary of State, P.O. Box 6327, Tallahassee, Florida 32314, as its agent upon whom service of process may be had in this action.

6.      Defendant, Atlas Air, Inc. (hereinafter "Atlas Air"), is a Delaware corporation having its principal place of business in New York, and is registered to conduct business in Florida and is subject to jurisdiction in the State of Florida pursuant to Florida Statutes § 48.193; thus,

formal service of process may be effected by serving its Registered Agent: CT Corporation Service, 1200 South Pine Island Road, Plantation, FL 33324.  Upon information and belief, Atlas was the owner operator of the subject aircraft and of Flight 3591.  It is further believed that Atlas loaded the Amazon cargo onto the subject aircraft.

7.     Defendant, Amazon.Com Services, Inc. (hereinafter "Amazon"), is a Delaware corporation having its principal place of business in Washington, and is subject to jurisdiction in the State of Florida pursuant to Florida Statutes § 48.193; thus, formal service of process may be effected by serving its Registered Agent: Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.  Upon information and belief, Amazon entered into a contract to dry lease the subject aircraft from the Atlas defendants.

8.     Defendant, Amazon Fulfillment Services, Inc (hereinafter "Amazon Services"), is a Delaware corporation having its principal place of business in Washington, and is subject to jurisdiction in the State of Florida pursuant to Florida Statutes § 48.193; thus, formal service of process may be effected by serving its Registered Agent: Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.  Upon information and belief, Amazon entered into a contract to dry lease the subject aircraft from the Atlas defendants.

9.     Defendant, F & E Aircraft Maintenance (Miami), LLC (hereinafter "F&E"), is a Delaware corporation having its principal place of business in Florida, and has a registered agent in Florida: Guy Tickner, 657 South Drive, Suite 306, Miami Springs, FL 33166.  Upon information and belief, F&E entered into a contract with Atlas to perform maintenance on its 767 Boeing fleet, including but not limited to line maintenance.

10.     Defendant, Flightstar Aircraft Services, LLC (hereinafter "Flightstar"), is a Florida corporation having its principal place of business in Florida and has a registered agent in Florida:

Alfredo Sol, 6025 Flightline Road, Building 815, Jacksonville, FL 32221.  Upon information and belief, Flightstar entered into a contract with Atlas to perform maintenance on its 767 Boeing fleet, including but not limited to annual inspections.

11.     Venue is proper in Miami-Dade County pursuant to Florida Statute section 47.011 because Defendants have offices where they transact their customary business in this county.

## **GENERAL ALLEGATIONS**

12.     On or about, May, 2016, the Defendants entered into agreements with each other to operate approximately twenty Boeing 767-300 aircraft; the accident aircraft, N1217A being one of them.  These operations included the delivery of cargo throughout the United States.

13.     On February 23, 2019 at approximate 12:30 p.m., Atlas Air Flight 3591, a Boeing 767, was nearing the end of flight from Miami to Houston's George Bush Intercontinental Airport, carrying cargo for Amazon and the U.S. Postal Service. The flight was operated as a Title 14 Code of Federal Regulations Part 121 domestic cargo flight. Two pilots were at the controls and another was riding as a passenger. Conrad Jules Aska was acting as the First Officer on the flight.

14.     At about 12:38 p.m., the aircraft was maneuvering about 40 miles east of the airport. The plane was descending from 8,500 feet, and the Houston TRACON final controller informed the pilots that they could expect a turn to the north for a base leg to the approach to runway 26L. The pilots responded, "sounds good" and "okay." At this time, flight radar indicated the airplane levelled briefly at 6,200 feet.

15.     Shortly after, the aircraft suddenly entered a rapid descent from approximately 6,000 feet—it pitched nose down over 18 seconds to about 49°—and then plowed into the muddy waters of Trinity Bay at tremendous speed, killing all three people onboard.

16.     A security camera video captured the airplane in a steep dive until impact with the swamp.



17.     The aircraft crashed at a high rate of speed into a shallow muddy swamp area. The wreckage was highly fragmented and resting in the soft mud.



18.     At the time of the subject crash, Aska was an employee working for Atlas.

19.     Weeks before the subject crash, over a dozen pilots from Atlas Air had warned that this sort of accident was inevitable. Pilots complained to Business Insider that Atlas overworked its pilots, putting them on fatiguing schedules. Other pilots said that the training their company provided was inadequate. Pilots for Amazon Air have also reported that they do not have regular work schedules. Instead, they are often asked to work mere hours before their flights are due to depart. Pilots have been called in on their days off and forced to work overtime. One Atlas pilot, Robert Kirchner, called the situation a "ticking time bomb" weeks before the crash.

20.     The Federal Aviation Administration has at least twice warned ABX Air, which is owned by ATSG, about creating "a disruptive and confrontational atmosphere" during pilot training.

21.     In addition to these complaints and violations, Atlas Air has had a number of incidents in the past year.

22.     In July 2018, an Atlas Air Boeing 767 cargo airplane had a hard landing at Portsmouth, New Hampshire airport. Creases around the fuselage and "substantial damage to the aircraft" was found after the flight inspection.

23.     In October 2018, a Boeing 747 cargo plane operated by Polar Air, a subsidiary of Atlas Air, veered off the runway at the Northern Kentucky Airport. It came to stop on soft ground.

24.     Conrad Jules Aska, while acting in the course and scope of his employment as a co-pilot for Atlas Air, suffered fatal injuries in the subject crash.

25.     At the time of the accident, Conrad Jules Aska was qualified and current in the Boeing 767 and held an FAA airline transport pilot certificate with type ratings for the B757/767,

EMB145, and EMB 170/190.  He had about 5,000 hours total flight experience with about 520 hours of experience in the Boeing 767.

26.    Atlas Air, as the operator of the subject aircraft, a dangerous instrumentality, and Amazon, as lessee of the subject aircraft, were involved in decisions regarding maintenance of the subject aircraft in an airworthy condition.

27.    As a direct and proximate result of defendants' actions and consequent death of Plaintiff's decedent, the Plaintiff has been damaged pursuant to the Florida Wrongful Death Act and claims all damages to which the Estate, the survivors, and/or beneficiaries may be entitled under applicable law, including but not limited to:

     a.    Pain and suffering of the survivors, beneficiaries and heirs of decedent;

     b.    Lost society, companionship, guidance and services of decedent to his survivors, beneficiaries and heirs;

     c.    Loss of support in money or in kind;

     d.    Lost net accumulations;

     e.    Lost value of life;

     f.    Funeral expenses; and/or

     g.    Any and all other damages to which the survivors, beneficiaries, and/or the Estate of Conrad Jules Aska may be entitled to recover under applicable law.

### COUNT I
### NEGLIGENCE
Against Atlas Air

28.    Plaintiff incorporates by reference each and every prior and subsequent allegation as though fully set forth herein.

29.     At all times material, Atlas Air owned the subject aircraft, an inherently dangerous instrumentality.

30.     At all times material, Atlas Air was operating the subject aircraft, as part of a contract it held with Amazon.

31.     At all times material, Atlas Air owed a duty to the decedent to maintain and use the subject aircraft with the highest degree of care, including a nondelegable duty to ensure its airworthiness, and to exercise the highest degree of care to prevent injury of any kind.

32.     Atlas Air knew or reasonably should have foreseen that the failure to exercise reasonable care in the maintenance and use of the aircraft, including ensuring its airworthiness, created a broad zone of risk that posed a general threat of harm to occupants of the subject aircraft.

33.     At all times material, Atlas Air breached its duty of care to occupants of the subject aircraft, including the Decedent, in some or all of the following ways:

       a.      Failing to ensure the airworthiness of the subject aircraft;

       b.      Failing to properly maintain the subject aircraft;

       c.      Failing to make necessary upgrades to the subject aircraft;

       d.      Failing to ensure proper use of the subject aircraft; and

       e.      Failing to protect against known or foreseeable risks and to take
               precautionary measures.

34.     Due to Atlas Air's negligent actions and omissions, the subject aircraft failed to perform in the manner reasonably expected in light of its nature and intended purpose.

35.     Atlas Air knew or should have known that its failure to properly maintain, and otherwise ensure the airworthiness of the subject aircraft; and its component parts, would create an unreasonable risk of harm or death to persons, like decedent, aboard the aircraft.

36.     Atlas Air knew or should have known that its failure to properly train its pilots, to prevent pilot fatigue, and to respond to prior incidents involving its aircraft would create an unreasonable risk of harm or death to persons, like decedent, aboard the aircraft.

37.     Atlas Air knew or should have known that its history of overworking pilots and forcing them to fly under fatiguing conditions and with little rest time would create an unreasonable risk of harm or death to persons, like decedent, aboard the aircraft.

38.     Atlas Air's negligence directly and proximately caused the death of decedent.

39.     As a direct and proximate result of Atlas Air's negligence, and the consequent death of decedent, Plaintiff has been damaged and claims all damages to which the estate is entitled under applicable law, including but not limited to:

a.     Pain and suffering of the survivors, beneficiaries and heirs of decedent;

b.     Lost society, companionship, guidance and services of decedent to his survivors, beneficiaries and heirs;

c.     Loss of support in money or in kind;

d.     Lost net accumulations;

e.     Lost value of life;

f.     Funeral expenses; and/or

g.     Any and all other damages to which the survivors, beneficiaries, and/or the Estate of Conrad Jules Aska may be entitled to recover under applicable law.

WHEREFORE, Plaintiff, Elliot Aska, as Personal Representative of the Estate of Conrad Jules Aska, deceased, on behalf of the Estate and all potential beneficiaries and heirs, demands judgment against Atlas Air for compensatory damages, costs, and such other relief this Court

deems appropriate. The Plaintiff further demands a trial by jury of all issues triable as of right by a jury.

**COUNT II**
**NEGLIGENCE**
Against Atlas Worldwide

40.     Plaintiff incorporates by reference each and every prior and subsequent allegation as though fully set forth herein.

41.     At all times material, Atlas Worldwide owned the subject aircraft, an inherently dangerous instrumentality.

42.     At all times material, Atlas Worldwide maintained and oversaw the operation of its aircraft and the operation of passenger and cargo flights to and from Miami International Airport, Miami, Florida.

43.     At all times material, Atlas Worldwide was operating the subject aircraft, as part of a contract it held with Amazon.

44.     At all times material, Atlas Worldwide owed a duty to the decedent to maintain and use the subject aircraft with the highest degree of care, including a nondelegable duty to ensure its airworthiness, and to exercise the highest degree of care to prevent injury of any kind.

45.     Atlas Worldwide knew or reasonably should have foreseen that the failure to exercise reasonable care in the maintenance and use of the aircraft, including ensuring its airworthiness, created a broad zone of risk that posed a general threat of harm to occupants of the subject aircraft.

46.     At all times material, Atlas Worldwide breached its duty of care to occupants of the subject aircraft, including the Decedent, in some or all of the following ways:

        a.      Failing to ensure the airworthiness of the subject aircraft;

b.      Failing to properly maintain the subject aircraft;

c.      Failing to make necessary upgrades to the subject aircraft;

d.      Failing to ensure proper use of the subject aircraft; and

e.      Failing to protect against known or foreseeable risks and to take precautionary measures.

47.     Due to Atlas Worldwide's negligent actions and omissions, the subject aircraft failed to perform in the manner reasonably expected in light of its nature and intended purpose.

48.     Atlas Worldwide knew or should have known that its failure to properly maintain, and otherwise ensure the airworthiness of the subject aircraft; and its component parts, would create an unreasonable risk of harm or death to persons, like decedent, aboard the aircraft.

49.     Atlas Worldwide knew or should have known that its failure to properly train its pilots, to prevent pilot fatigue, and to respond to prior incidents involving its aircraft would create an unreasonable risk of harm or death to persons, like decedent, aboard the aircraft.

50.     Atlas Worldwide knew or should have known that its history of overworking pilots and forcing them to fly under fatiguing conditions and with little rest time would create an unreasonable risk of harm or death to persons, like decedent, aboard the aircraft.

51.     Atlas Worldwide's negligence directly and proximately caused the death of decedent.

52.     As a direct and proximate result of Atlas Worldwide's negligence, and the consequent death of decedent, Plaintiff has been damaged and claims all damages to which the estate is entitled under applicable law, including but not limited to:

a.      Pain and suffering of the survivors, beneficiaries and heirs of decedent;

b.      Lost society, companionship, guidance and services of decedent to his survivors, beneficiaries and heirs;

11

    c.      Loss of support in money or in kind;

    d.      Lost net accumulations;

    e.      Lost value of life;

    f.      Funeral expenses; and/or

    g.      Any and all other damages to which the survivors, beneficiaries, and/or the Estate of Conrad Jules Aska may be entitled to recover under applicable law.

WHEREFORE, Plaintiff, Elliot Aska, as Personal Representative of the Estate of Conrad Jules Aska, deceased, on behalf of the Estate and all potential beneficiaries and heirs, demands judgment against Atlas Worldwide for compensatory damages, costs, and such other relief this Court deems appropriate. The Plaintiff further demands a trial by jury of all issues triable as of right by a jury.

### COUNT III
**NEGLIGENCE**
Against Amazon

53.    Plaintiff incorporates by reference each and every prior and subsequent allegation as though fully set forth herein.

54.    At all times material, Amazon dry leased the subject aircraft, an inherently dangerous instrumentality.

55.    At all times material, Amazon owed a duty to the decedent to maintain and use the subject aircraft with the highest degree of care, including a nondelegable duty to ensure its airworthiness, and to exercise the highest degree of care to prevent injury of any kind.

56.    Amazon knew or reasonably should have foreseen that the failure to exercise reasonable care in the maintenance and use of the aircraft, including ensuring its airworthiness, created a broad zone of risk that posed a general threat of harm to occupants of the subject aircraft.

57.     Amazon knew or should have known that its history of overworking pilots and forcing them to fly under fatiguing conditions and with little rest time would create an unreasonable risk of harm or death to persons, like decedent, aboard the aircraft.

58.     At all times material, Amazon breached its duty of care to occupants of the subject aircraft, including the Decedent, in some or all of the following ways:

    a.     Failing to ensure the airworthiness of the subject aircraft;

    b.     Failing to properly maintain the subject aircraft;

    c.     Failing to make necessary upgrades to the subject aircraft;

    d.     Failing to ensure proper use of the subject aircraft; and

    e.     Failing to protect against known or foreseeable risks and to take precautionary measures.

59.     Due to Amazon's negligent actions and omissions, the subject aircraft failed to perform in the manner reasonably expected in light of its nature and intended purpose.

60.     Amazon knew or should have known that its failure to properly maintain, and otherwise ensure the airworthiness of the subject aircraft; and its component parts, would create an unreasonable risk of harm or death to persons, like decedent, aboard the aircraft.

61.     Amazon's negligence directly and proximately caused the death of decedent.

62.     As a direct and proximate result of Amazon's negligence, and the consequent death of decedent, Plaintiff has been damaged and claims all damages to which the estate is entitled under applicable law, including but not limited to:

    a.     Pain and suffering of the survivors, beneficiaries and heirs of decedent;

    b.     Lost society, companionship, guidance and services of decedent to his survivors, beneficiaries and heirs;

    c.     Loss of support in money or in kind;

d.      Lost net accumulations;

e.      Lost value of life;

f.      Funeral expenses; and/or

g.      Any and all other damages to which the survivors, beneficiaries, and/or the Estate of Conrad Jules Aska may be entitled to recover under applicable law.

WHEREFORE, Plaintiff, Elliot Aska, as Personal Representative of the Estate of Conrad Jules Aska, deceased, on behalf of the Estate and all potential beneficiaries and heirs, demands judgment against Amazon for compensatory damages, costs, and such other relief this Court deems appropriate. The Plaintiff further demands a trial by jury of all issues triable as of right by a jury.

## <u>COUNT IV</u>
### NEGLIGENCE
Against Amazon Services

63.    Plaintiff incorporates by reference each and every prior and subsequent allegation as though fully set forth herein.

64.    At all times material, Amazon Services dry leased the subject aircraft, an inherently dangerous instrumentality.

65.    At all times material, Amazon Services engaged in the delivery of cargo, transported by aircraft to and from Miami International Airport, Miami, Florida.

66.    At all times material, Amazon Services owed a duty to the decedent to maintain and use the subject aircraft with the highest degree of care, including a nondelegable duty to ensure its airworthiness, and to exercise the highest degree of care to prevent injury of any kind.

67.    Amazon Services knew or reasonably should have foreseen that the failure to exercise reasonable care in the maintenance and use of the aircraft, including ensuring its

14

airworthiness, created a broad zone of risk that posed a general threat of harm to occupants of the subject aircraft.

68.     Amazon Services knew or should have known that its history of overworking pilots and forcing them to fly under fatiguing conditions and with little rest time would create an unreasonable risk of harm or death to persons, like decedent, aboard the aircraft.

69.     At all times material, Amazon Services breached its duty of care to occupants of the subject aircraft, including the Decedent, in some or all of the following ways:

a.      Failing to ensure the airworthiness of the subject aircraft;

b.      Failing to properly maintain the subject aircraft;

c.      Failing to make necessary upgrades to the subject aircraft;

d.      Failing to ensure proper use of the subject aircraft; and

e.      Failing to protect against known or foreseeable risks and to take precautionary measures.

70.     Due to Amazon Services' negligent actions and omissions, the subject aircraft failed to perform in the manner reasonably expected in light of its nature and intended purpose.

71.     Amazon Services knew or should have known that its failure to properly maintain, and otherwise ensure the airworthiness of the subject aircraft; and its component parts, would create an unreasonable risk of harm or death to persons, like decedent, aboard the aircraft.

72.     Amazon Services' negligence directly and proximately caused the death of decedent.

73.     As a direct and proximate result of Amazon Services' negligence, and the consequent death of decedent, Plaintiff has been damaged and claims all damages to which the estate is entitled under applicable law, including but not limited to:

a.   Pain and suffering of the survivors, beneficiaries and heirs of decedent;

b.   Lost society, companionship, guidance and services of decedent to his survivors, beneficiaries and heirs;

c.   Loss of support in money or in kind;

d.   Lost net accumulations;

e.   Lost value of life;

f.   Funeral expenses; and/or

g.   Any and all other damages to which the survivors, beneficiaries, and/or the Estate of Conrad Jules Aska may be entitled to recover under applicable law.

WHEREFORE, Plaintiff, Elliot Aska, as Personal Representative of the Estate of Conrad Jules Aska, deceased, on behalf of the Estate and all potential beneficiaries and heirs, demands judgment against Amazon Services for compensatory damages, costs, and such other relief this Court deems appropriate. The Plaintiff further demands a trial by jury of all issues triable as of right by a jury.

### COUNT V
### NEGLIGENCE
Against F&E

74.   Plaintiff incorporates by reference each and every prior and subsequent allegation as though fully set forth herein.

75.   F&E knew or should have known that if its maintenance, repair, modification, testing and/or inspection of the subject aircraft was not properly executed, there would be an unreasonable risk of harm to persons operating, flying, and/or being flown aboard the subject aircraft.

76.     F&E breached their continuing and/or on-going duties and/or negligently and carelessly failed to discharge its duties by, among other things:

   a.     Failing to service, maintain, repair, modify, test and/or inspect the subject aircraft and the aircraft's engines to ensure that the subject aircraft could be safely operated and complied with all applicable bulletins and directives; and/or

   b.     Failing to test and/or inspect the subject aircraft and the aircraft's engines for dangerous conditions that existed and/or were likely to exist in the subject aircraft; and/or

   c.     Failing to modify, service and/or repair dangerous conditions that were known or should have been known by F&E in the exercise of reasonable care; and/or

   d.     Failing to warn pilots, including Plaintiff's decedent, Conrad Jules Aska, of such dangerous conditions concerning and/or relating to F&E's testing and/or inspection of the subject aircraft that were known and/or should have been known to F&E.

77.     As a direct and proximate result of F&E's negligence, and the consequent death of decedent, Plaintiff has been damaged and claims all damages to which the estate is entitled under applicable law, including but not limited to:

   a.     Pain and suffering of the survivors, beneficiaries and heirs of decedent;

   b.     Lost society, companionship, guidance and services of decedent to his survivors, beneficiaries and heirs;

   c.     Loss of support in money or in kind;

   d.     Lost net accumulations;

   e.     Lost value of life;

   f.     Funeral expenses; and/or

17

g.      Any and all other damages to which the survivors, beneficiaries, and/or the Estate of Conrad Jules Aska may be entitled to recover under applicable law.

WHEREFORE, Plaintiff, Elliot Aska, as Personal Representative of the Estate of Conrad Jules Aska, deceased, on behalf of the Estate and all potential beneficiaries and heirs, demands judgment against F&E for compensatory damages, costs, and such other relief this Court deems appropriate. The Plaintiff further demands a trial by jury of all issues triable as of right by a jury.

## COUNT VI
### NEGLIGENCE
Against Flightstar

78.     Plaintiff incorporates by reference each and every prior and subsequent allegation as though fully set forth herein.

79.     Flightstar knew or should have known that if its maintenance, repair, modification, testing and/or inspection of the subject aircraft was not properly executed, there would be an unreasonable risk of harm to persons operating, flying, and/or being flown aboard the subject aircraft.

80.     Flightstar breached their continuing and/or on-going duties and/or negligently and carelessly failed to discharge its duties by, among other things:

a.      Failing to service, maintain, repair, modify, test and/or inspect the subject aircraft and the aircraft's engines to ensure that the subject aircraft could be safely operated and complied with all applicable bulletins and directives; and/or

b.      Failing to test and/or inspect the subject aircraft and the aircraft's engines for dangerous conditions that existed and/or were likely to exist in the subject aircraft; and/or

c.      Failing to modify, service and/or repair dangerous conditions that were known or should have been known by Flightstar in the exercise of reasonable

18

care; and/or

d.    Failing to warn pilots, including Plaintiff's decedent, Conrad Jules Aska, of such dangerous conditions concerning and/or relating to Flightstar's testing and/or inspection of the subject aircraft that were known and/or should have been known to Flightstar.

81.    As a direct and proximate result of Flightstar's negligence, and the consequent death of decedent, Plaintiff has been damaged and claims all damages to which the estate is entitled under applicable law, including but not limited to:

a.    Pain and suffering of the survivors, beneficiaries and heirs of decedent;

b.    Lost society, companionship, guidance and services of decedent to his survivors, beneficiaries and heirs;

c.    Loss of support in money or in kind;

d.    Lost net accumulations;

e.    Lost value of life;

f.    Funeral expenses; and/or

g.    Any and all other damages to which the survivors, beneficiaries, and/or the Estate of Conrad Jules Aska may be entitled to recover under applicable law.

WHEREFORE, Plaintiff, Elliot Aska, as Personal Representative of the Estate of Conrad Jules Aska, deceased, on behalf of the Estate and all potential beneficiaries and heirs, demands judgment against Flightstar for compensatory damages, costs, and such other relief this Court deems appropriate. The Plaintiff further demands a trial by jury of all issues triable as of right by a jury.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff demands a trial by jury of all issues triable as of right by a jury.

DATED this 19th day of September, 2019.

Respectfully submitted,

**PODHURST ORSECK, P.A.**
Attorneys for Plaintiff
One S.E. 3rd Avenue, Suite 2700
Miami, Florida 33131
(305) 358-2800/Fax (305) 358-2382
Email: smarks@podhurst.com

By:   /s/ Steven C. Marks
     STEVEN C. MARKS
     Fla. Bar No. 516414
     KRISTINA M. INFANTE
     Fla Bar No. 112557

and co-counsel

By:  /s/Aaron Resnick
AARON R. RESNICK, ESQ.
Florida Bar No. 141097
**LAW OFFICES OF AARON RESNICK, P.A.**
100 Biscayne Boulevard, Suite 1607
Miami, Florida 33132
Telephone (305) 672-7495
Facsimile (305) 672-7496
Primary Email: aresnick@thefirmmiami.com
Secondary Email: Efile@thefirmmiami.com

Filing # 95953568 E-Filed 09/19/2019 09:52:44 AM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.

ELLIOTT ASKA, as Personal Representative of
the Estate of Conrad Jules Aska, deceased, on behalf
of himself and all potential beneficiaries and heirs,

   Plaintiff,

vs.

ATLAS AIR WORLDWIDE HOLDINGS, INC.;
ATLAS AIR, INC.; AMAZON.COM SERVICES,
INC.; AMAZON FULFILLMENT SERVICES, INC.;
F & E AIRCRAFT MAINTENANCE (MIAMI), LLC;
and FLIGHTSTAR AIRCRAFT SERVICES, LLC;

   Defendants.

_____/

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANTS

The Plaintiff, herein request that the Defendants, produce for inspection and copying the following documents in accordance with the Florida Rules of Civil Procedure:

### INSTRUCTIONS

1. Answer each request for documents separately by listing the documents and by describing them as defined below.  If documents produced in response to the request are numbered for production, in each response provide both the information that identifies the document and the document's number.

2. For a document that no longer exists or that cannot be located, identify the documents, state how and when it passed out of existence, or when it could no longer be located,

and the reasons for the disappearance.   Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any facts about the lost document.

a.      When identifying the document, you must state the following:

(1)      The nature of the document (e.g., letter, handwritten note).

(2)      The title or heading that appears on the document.

(3)      The date of the document and the date of each addendum, supplement, or other addition or change.

(4)      The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.

b.      When identifying a person, you must state the following:

(1)      The full name.

(2)      The present or last known residential address and residential telephone number.

(3)      The present or last known office address and office telephone number.

(4)      The present occupation, job title, employer, and employer's address.

3.      It is requested that electronic or magnetic data that is responsive to the following request be provided in electronic format. It is requested that the electronic data be produced in its original format on a CD-ROM.

## DEFINITIONS

The following definitions shall have the following meanings, unless the context requires otherwise:

1.      "Plaintiff" or "defendant", as well as a party's full or abbreviated name or a pronoun referring to a party, means the party, and where applicable, the party's agents, representatives,

officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney.

2.      You or Your refers to the Person to whom these discovery requests are addressed, all predecessors in interest or successors in interest to such Person, including but not limited to all persons, agents, employees, representatives, heirs, assigns, and others acting on behalf of any such person.

3.      "Document" means all written, typed, or printed matters, and all magnetic, electronic, or other records or documentation of any kind or description in your actual possession, custody, or control, including those in the possession, custody, or control of any and all present or former directors, officers, employees, consultants, accountants, attorneys or other agents, whether or not prepared by you, that constitute or contain matters relevant to the subject matter of the action.

4.      "Possession, custody, or control" of an item means that the person either has physical possession of the item or has a right to possession equal or superior to that of the person who has physical possession of the item.

5.      "Person" means any natural person, corporation, firm, association, partnership, joint venture, proprietorship, governmental body, or any other organization, business, or legal entity, and all predecessors or successors in interest.

6.      "Mobile device" means cellular telephone, satellite telephone, pager, personal digital assistant, handheld computer, electronic rolodex, walkie-talkie, or any combination of these devices.

7.      Accident/Incident reports mean any and all documents recording the damage, destruction or failure of an aircraft or its components; injury or death to persons arising from the use, operation or maintenance of an aircraft or its components; damage or destruction of property arising from the use, operation or maintenance of an aircraft or its components; action taken in response to such accidents and/or incidents, including all documents concerning analyses, investigations, reviews, etc.; also includes those identified by other prefixes and/or suffixes; further includes all additions, amendments, changes, revisions and/or supplements to such documents.

8.      Aircraft or the subject plane refers to the Boeing 767-30, Registration N1217A, which is the subject of this Lawsuit.

9.      Communication includes, without limitation, letters, e-mail memoranda, memoranda, telecopies, cellular phone messages notes, statements, discussions, conversations, speeches, meetings, remarks, questions, answers, panel discussions and symposia, whether written or oral.   Such term also includes, without limitation, both Communications and statements which are face-to-face and those which are transmitted by other methods.

10.     Document means the original or an identical copy, if the original is not available, of all written, recorded, pictorial, or graphic matter, however produced or reproduced, now or at the time in Your Possession, Custody, or Control, including but not limited to, papers, books, accounts, drawings, graphs, photographs, electronic or videotape recordings, data, data compilations, intra-company drafts of the foregoing items, and/or copies or reproductions of the foregoing upon which notations in writing have been made which do not appear on the originals. The term also includes Communications not only in words, but in symbols, pictures, sound

**REQUEST FOR PRODUCTION**

1.      The organizational chart for Defendant, specifically including the names and addresses of the personnel occupying each position reflected thereon.

2.      Copies of all documents, investigations, reports, photographs, or other information relating to the subject accident and/or any other incident involving failures of the subject aircraft or any component part thereto.

3.      The Pilot's Operating Handbooks, Aircraft Flight Manuals, Minimum Equipment List, Crew Manuals, Aircraft Operations Manuals, Flight Operations Manuals, Training Manuals, normal or abnormal procedure checklists for the subject aircraft, any other document required by Title 14 Code of Federal Regulations Part 91 recurrent training manuals, and/or any supplemental or additional document or any other operations, maintenance, or flight manual related to the subject aircraft, in existence at the time to the subject crash, including all revisions thereto.

4.      The documents that you reasonably believe may be relied upon and/or introduce into evidence at the time of trial.

5.      Copies of all maintenance records, receipts, invoices, and/or work orders regarding the subject aircraft, including but not limited to any modification, alteration or overhaul procedures performed thereon as well as routine maintenance and inspections.

6.      Copies of all work orders and invoices for the subject aircraft.

7.      Copies of any warnings, recall notices and/or grounding advisories for the subject aircraft or any of its component parts.

8.      Copies of all documents, inspections, investigations and other information relating to the

6

issuance of safety of flight messages and/or operations safety notices relating to the subject aircraft.

9.    Copies of the aircraft and engine log books for the subject aircraft.

10.   Any and all documents, records, notes, memoranda and/or other material capable of production regarding the subject aircraft as it relates in any way to mechanical problems or other problems with the subject aircraft, and/or avionics including but not limited to anything else Defendant contends may have caused or contributed to the cause of the accident.

11.   Any and all correspondence, e-mail, notices, alert service bulletins, information letters, technical bulletins, service letters, operation safety notices, warnings and/or documents of any kind regarding the subject aircraft.

12.   All insurance policies which may provide liability coverage for this claim.

13.   The wreckage of the subject aircraft.

14.   NTSB lab photos applicable to subject crash.

15.   Copies of work orders, logbook signoffs, airworthiness certification sheets, including but not limited to FAA Form 8130s, relating of the subject aircraft.

16.   Defendant's quality control or inspection procedure manual.

17.   Copies of photographs and videotapes of the crash site and/or accident scene.

18.   Copies of documents submitted to or received from the Federal Aviation Administration related to the subject aircraft.

19.   Copies of maintenance invoices or repair orders which pertain to the subject aircraft.

20.   Copies of quality control, quality assurance and/or quality inspection records for the subject

aircraft.

21.   Copies of the pilot handbook, maintenance manual, and parts catalog applicable to the

subject aircraft.

22.   Copies of the Federal Aviation Administration Certificates and/or licenses possessed by

you and which relate to the manufacture, production and sale of the subject aircraft.

23.   Copies of documents you claim support any affirmative defense asserted by you, whether

such defense includes a statute of repose, comparative negligence, preemption or any other

such defense that is characterized as an affirmative defense.

24.   Copies of pre-crash photographs of the subject aircraft and any component parts of the

subject aircraft.

25.   Copies of documents which discuss, mention or pertain to investigation of the accident

made the basis of this suit, including witness statements, videotapes, and photographs,

made prior to the filing of this lawsuit which are in your custody and/or control.

26.   Copies of all documents including records, photographs and videotapes provided to you or

provided by you to the FAA or the NTSB with regard to the subject aircraft or the crash in

question.

27.   Copies of statements made by Plaintiff and /or decedent's survivors regarding the incident

which is the basis of this lawsuit relating to the occurrence in question or the subject matter

of this lawsuit, currently in the possession of defendant or its agents or representatives,

including the insurance company which insurers the defendant.

28.   To the extent that you are self-insured, copies of all documents which discuss, mention or

pertain to your ability to satisfy all of a judgment which may be obtained by Plaintiff in

this action.

29.   Copies of accident reports or incident reports concerning this crash which pre-date your receipt of suit papers in this case.

30.   Copies of documents, including memoranda and field investigator notes, concerning this accident generated prior to the date you received service of this lawsuit by anyone who investigated the accident.

31.   Copies of documents which were sent to or received from any person or entity not a party to this lawsuit concerning the subject aircraft, its components and/or the subject accident prior to the date you received service of this suit.   This request includes documents sent by or to you, as well as documents sent from one non-party entity other than you to another non-party entity other than you.

32.   Copies of written or recorded statements (including a copy of the actual recording and transcript) in defendant's possession or constructive possession regarding the crash in question and/or the subject aircraft.

33.   To the extent not produced in response to another request, copies of correspondence, memoranda and/or documents you submitted to the Federal Aviation Administration regarding the accident in question.

34.   To the extent not produced in response to another request, copies of correspondence, memoranda and/or documents you submitted to the National Transportation Safety Board regarding the accident in question.

35.   To the extent not produced in response to another request, copies of receipts, invoices, memoranda, work orders concerning work performed on the subject aircraft.

36.     To the extent not produced in response to another request, copies of documents identified in response to the interrogatories directed to you.

37.     To the extent not produced in response to another request, copies of documents relied upon in preparation of responses to the interrogatories directed to you.

38.     To the extent not produced in response to another request, copies of documents that identify or refer to persons with knowledge of the subject matter of this lawsuit.

39.     To the extent not produced in response to another request, copies of documents which discuss, mention or pertain to any individual including the individual's name, address and occupation who was a witness or purports to be a witness or purports to have information relating to the crash in question.

40.     To the extent not produced in response to another request, copies of documents that identify any person with opinions relevant to this lawsuit.

41.     To the extent not produced in response to another request, copies of documents which reflect an admission of any kind by any party to this lawsuit, their agents, representatives, or employees, which admission is relevant in any way to this lawsuit.

42.     To the extent not produced in response to another request, copies of photographs or electronic images of the subject aircraft.

43.     To the extent not produced in response to another request, copies of photographs, electronic images, drawings, diagrams, sketches, video tapes, computer animations, scale models or other renderings purporting to show any aircraft involved in the incident and/or the area immediately surrounding the incident, as they existed at any time prior to the incident.

44.     To the extent not produced in response to another request, copies of photographs, electronic

images, drawings, diagrams, sketches, video tapes, computer animations, scale models or other renderings purporting to re-create the manner in which the incident occurred.

45.    To the extent not produced in response to another request, copies of photographs, electronic images, drawings, diagrams, sketches, video tapes, computer animations, scale models or other renderings purporting to show the manner in which the incident occurred.

46.    To the extent not produced in response to another request, copies of photographs, electronic images, drawings, diagrams, sketches, video tapes, computer animations, scale models or other renderings purporting to show the location and/or the area immediately surrounding the incident.

47.    To the extent not produced in response to another request, copies of your entire "Incident file" or "Accident file" with regard to this crash.

48.    To the extent not produced in response to another request, copies of documents and/or photographs regarding any investigation, inspection, and/or testing related in any way to the incident.

49.    To the extent not produced in response to another request, copies of documents memorializing any inquiries, investigations, inspection, and/or testing or other due diligence conducted by or for any governmental entity regarding the incident.

50.    To the extent not produced in response to another request, copies of documents constituting any form of report made as a result of any inquiries, investigations, inspection, and/or testing or other due diligence conducted by or for any governmental entity regarding the cause of the incident.

51.    To the extent not produced in response to another request, copies of documents

11

memorializing any information conveyed to any governmental entity regarding the incident, the subject aircraft, repair or maintenance on the aircraft.

52.    To the extent not produced in response to another request, copies of reports, memos, e-mails with all persons/entities that investigated or did testing on the subject aircraft and its components.

53.    To the extent not produced in response to another request, copies of documents reflecting media coverage which resulted from the incident, including photographs, newspaper clippings, web site print outs, and/or video clips from news broadcasts.

54.    Copies of audio and video recordings and transcriptions, reflecting voice communications either to or from the subject aircraft.

55.    To the extent not produced in response to another request, copies of documents regarding any modification to an engine, control system, avionics, or airframe which have been made to the subject aircraft.

56.    Copies of documents, photographs or test results regarding any material analysis or metallurgical analysis of any component of the subject aircraft.

57.    Copies of reports, correspondence, documents, e-mails, and memorandums relating to alleged deficiencies with the subject aircraft.

58.    Copies of documents, notes, billing records, correspondence file, spread sheets, computer files, used or reviewed by any testifying expert.

59.    Copies of all reports and drafts of reports generated by any consultant who you do not positively aver will not be called as a testifying expert.

60.    Copies of all documents, provided to any person who you may call to testify in this matter

which were used by that person to refresh recollection or to obtain information concerning this matter which was not a part of that person's original memory.

61.    The reports of individuals whom you intend to call as expert witnesses at trial.

62.    Copies of all billing records for any person identified as a potential testifying expert for you in the subject case.   It is requested a current bill be brought with the expert to the deposition.

63.    Copies of correspondence, e-mails, pilot files and records that reference the pilot and co-pilot.

64.    Copies of correspondence, e-mails, pilot files and records that reference the Plaintiff or decedent.

65.    Copies of the pilots' employment files.

66.    Copies of inspector sign-offs or endorsements for work done on the subject aircraft and its subcomponents.

67.    Copies of flight path reconstructions, radar data, and air traffic control communications for the flight that ended in the subject crash.

The Plaintiff further requests that Defendant maintain any and all documents, emails, photographs, or tape recordings which in any way relate to the subject aircraft -- whether requested or not, whether privileged or not -- until the conclusion of this litigation.

## <u>CETIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served with the summons and complaint on the defendant.

**PODHURST ORSECK, P.A.**
Attorneys for Plaintiff

13

One S.E. 3rd Avenue, Suite 2700
Miami, Florida 33131
(305) 358-2800/Fax (305) 358-2382


By:___/s/ Steven C. Marks_____
    STEVEN C. MARKS
    Fla. Bar No. 516414
    KRISTINA M. INFANTE
    Fla Bar No. 112557
    smarks@podhurst.com; kinfanter@podhurst.com;
    asanjenis@podhurst.com; laja@podhurst.com

and co-counsel

By:  /s/Aaron Resnick_____
    AARON R. RESNICK, ESQ.
    Florida Bar No. 141097
    **LAW OFFICES OF AARON RESNICK, P.A**.
    100 Biscayne Boulevard, Suite 1607
    Miami, Florida 33132
    Telephone (305) 672-7495
    Facsimile (305) 672-7496
    Primary Email: aresnick@thefirmmiami.com
    Secondary Email: Efile@thefirmmiami.com

14

Filing # 95953568 E-Filed 09/19/2019 09:52:44 AM

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.:

ELLIOTT ASKA, as Personal Representative of
the Estate of Conrad Jules Aska, deceased, on behalf
of himself and all potential beneficiaries and heirs,

       Plaintiff,

vs.

ATLAS AIR WORLDWIDE HOLDINGS, INC.;
ATLAS AIR, INC.; AMAZON.COM SERVICES,
INC.; AMAZON FULFILLMENT SERVICES, INC.;
F & E AIRCRAFT MAINTENANCE (MIAMI), LLC;
and FLIGHTSTAR AIRCRAFT SERVICES, LLC;

       Defendants.

_____/

**PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANTS**

Plaintiffs, ELLIOTT ASKA, as Personal Representative of the Estate of Conrad Jules

Aska, deceased, on behalf of himself and all potential beneficiaries and heirs, propounds the

attached interrogatories numbered 1 through 12 to Defendants, to be answered in accordance with

the Florida Rules of Civil Procedure, Rule 1.340.

**CETIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served with the summons and

complaint on the defendant.

       **PODHURST ORSECK, P.A.**
       Attorneys for Plaintiff
       One S.E. 3rd Avenue, Suite 2700
       Miami, Florida 33131

(305) 358-2800/Fax (305) 358-2382


By:___/s/ Steven C. Marks_____
   STEVEN C. MARKS
   Fla. Bar No. 516414
   KRISTINA M. INFANTE
   Fla Bar No. 112557
   smarks@podhurst.com; kinfanter@podhurst.com;
   asanjenis@podhurst.com; laja@podhurst.com

and co-counsel

By:  /s/Aaron Resnick_____
   AARON R. RESNICK, ESQ.
   Florida Bar No. 141097
   **LAW OFFICES OF AARON RESNICK,
   P.A**.
   100 Biscayne Boulevard, Suite 1607
   Miami, Florida 33132
   Telephone (305) 672-7495
   Facsimile (305) 672-7496
   Primary Email: aresnick@thefirmmiami.com
   Secondary Email: Efile@thefirmmiami.com